# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 05-03079-01-CR-S-RED |
| JAMES MICHAEL ALSUP, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of a search of his vehicle on April 24, 2004, should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on August 23, 2005. The defendant was present with counsel, John Appelquist, and the United States was represented by Michael Hendrickson, Special Assistant United States Attorney.

The government called Corporal Ryan Bunch of the West Plains Police Department. On April 24, 2004, he made a traffic stop in the city of West Plains because he saw a white Mazda pickup truck with a taillight burned out. He turned on his lights and the pickup truck pulled over. Defendant, who was driving, said he did not have a driver's license with him, but provided a Missouri identification card. Defendant also did not have any proof of insurance or vehicle registration papers. A passenger, Kenneth Smith, was with defendant. The officer told defendant why he stopped him. He noticed a lot of tools in the bed of the truck. They were dry, although it had been raining all day. The officer felt that something wasn't right. He asked defendant to get

1

out of his truck, as he normally takes a person back to his patrol car when he issues a ticket. At that point, he did not know what ticket he was planning to issue. He planned to run defendant's identification to check on whether there were any warrants for his arrest. After having defendant exit his vehicle, he asked for consent to search his person for weapons and contraband, which is standard procedure before he takes anyone back to his patrol car. He did not find anything. They then got in the patrol car, and Corporal Bunch ran a records checks for history and warrants. He had some difficulty getting a good, current address from defendant, which also raised his suspicions. He learned from the dispatcher that defendant's license was revoked and he was on probation. He then wrote defendant a traffic citation for driving while his license was revoked. The officer explained the ticket to defendant, and had him sign the paperwork indicating that he had received the ticket. At this point, the issuance of the traffic ticket was complete. While still in the patrol car, the officer performed a sobriety test on defendant, checking his eyes for nystagmus. This took a few seconds. The officer did not proceed with a field sobriety test, because he did not believe defendant was intoxicated.

    Corporal Bunch testified that he then asked defendant if he had anything illegal in his vehicle that the officer needed to know about. Defendant responded that there was not. The officer requested consent to search his truck, and defendant gave consent. After exiting the patrol car, he had defendant stand about 15 feet in front of the truck, in the grass, for the officer and defendant's safety. He asked Mr. Smith to exit the vehicle, and he stood over by defendant, after the officer had searched him for weapons. Officers Shawn Duggins and John Cotter showed up after he had received the consent, and just after he had begun the search. Officer Cotter advised Corporal Bunch that defendant said that there were weapons behind the seat. Corporal Bunch found the weapons.

He then contacted dispatch, and had criminal histories run on both men. He then placed them under arrest as felons in possession of firearms. It was about twelve or thirteen minutes from the initial stop until he asked for consent to search. While searching, defendant did not object. When the officer removed the three firearms, he did not object to that either. Corporal Bunch made a report about this incident, and a videotape of the stop, which included the majority of the events occurring at the stop and search of the vehicle.

On cross-examination, the officer testified that, although defendant eventually provided a Missouri identification card, he did not have proof of insurance. Regarding the dry tools and large floor jack in the back of the truck, this seemed unusual since it had been raining all day. He admitted that he had stated that he "had a hunch that something wasn't right." [Tr. 20]. The officer acknowledged that he never asked defendant about the contents of the pickup truck. When he asked if there was anything illegal in the vehicle, he specifically asked about drugs and paraphernalia. He admitted that when he had defendant sit in the patrol car, he hadn't decided what traffic citation he was going to issue. Regarding the consent search of defendant's person, he admitted that he conducted a full pat-down search, including examining the contents of his pockets. There was nothing illegal found during that search. The officer checked defendant's driving history and active warrants. He confirmed that defendant's license was revoked, and that there was an active warrant out of Greene County. He was not able to take him into custody on that warrant, because it was only for adjoining counties, so he was non-extraditable from Howell County. He asked defendant about being on probation, and he admitted that he had been "on paper" for about three months. [Tr. 24]. Corporal Bunch admitted that he did not know anything otherwise about that conviction. He did not arrest defendant for driving with a revoked license,

3

but he did write him a traffic citation for that offense. He did not write a citation for having a taillight out or for no proof of insurance. Regarding defendant's address, the officer acknowledged that he probably had the numbers transposed when he gave him the address. The officer testified that after he had written the ticket, explained it to defendant, and exchanged some paperwork, defendant was free to leave. But, at that point, he checked his eyes by using the gaze nystagmus test. This did not take very long. The test was negative for signs of intoxication. Defendant was still sitting in the patrol car with the doors closed, although free to leave, according to the officer. He asked him if there was anything illegal in the car he needed to know about, and defendant said there was not. The officer also asked if there were any drugs or paraphernalia in the vehicle. Corporal Bunch testified that he usually asks if he can check or search a vehicle. On this occasion, he said, "you got any problem with me looking in the vehicle." [Tr. 29]. He also admitted he told defendant that he would make him a deal that if there were any drugs or paraphernalia in the truck, defendant should tell him about it now. The officer testified that he did this because it could save going in and tearing the vehicle apart. After defendant gave consent, they both exited the vehicle, and he had defendant stand about ten feet away from the passenger side of the vehicle as a standard safety procedure. He did not inform defendant that he had the right to refuse consent to search his vehicle, and did not get consent in writing.

On redirect examination, Corporal Bunch testified that because there was no lawful driver after finding out that both individuals had revoked licenses, he could have arrested both on this violation or let them walk away. He stated that he could have conducted an inventory search of the vehicle, preferably at the scene. The officer also testified that defendant was not

4

handcuffed nor told he was under arrest while he was in the patrol vehicle.

The next witness for the government, John Cotter, was employed as a patrolman for the West Plains Police Department at the time in question. He arrived on the scene to assist Corporal Bunch, after defendant had consented to the search. Reserve Officer Shawn Duggins was also there, standing with defendant and Mr. Smith. He overheard defendant say there were firearms behind the seat of the vehicle. This was after Corporal Bunch had started the search. Mr. Cotter told Corporal Bunch what he had heard. He remained on the scene while each of the firearms was removed from the truck, until he took Mr. Smith to his patrol car. During the time he was there, he never witnessed defendant object to the search.

On cross-examination, the officer testified that defendant, Mr. Smith, and Officer Duggins were about ten feet away from the vehicle. Regarding the statement defendant made about firearms in the vehicle, Mr. Cotter overheard it, but he felt that defendant was saying it to everyone in general. In his motion to suppress, defendant contends that Corporal Bunch had only a constitutionally-insufficient bare suspicion that caused him to inquire further after having written him the citation. Therefore, it is his position that the continuation of his detention was unlawful and that the evidence discovered incident to the consent search should be suppressed.

The government maintains that reasonable suspicion is not a prerequisite before a police officer is entitled to ask for a consent search. It is asserted that an officer can request permission to search after the completion of the traffic stop if the encounter after its completion is consensual, and that, in this case, defendant gave his voluntary consent.

In his supplemental suggestions, defendant contends that he is urging that an objectively-reasonable, articulable suspicion must exist in order for an officer to continue the detention of a

5

motorist after the traffic stop has concluded. In this case, he asserts that Corporal Bunch only had a hunch that something wasn't right when the saw the dry tools in the back of defendant's pickup truck. He contends that the critical point in time is when the officer had completed writing the ticket for driving while revoked and explained it to defendant. He asserts that defendant's encounter was not consensual at this point because: the officer never told him he was free to go; he was in the passenger seat of the patrol car with the door closed and a barking dog in the back seat behind him, after having been subjected to a full-body pat-down and search of the contents of his pockets on the way to the patrol car; and the officer affirmatively took the action after writing the ticket of administering the "gaze nystagmus" test, which did not permit defendant to leave. Therefore, he contends that there was not a seamless transition from the traffic ticket to the request for consent, and that the encounter did not remain consensual.

The law is well-established that a traffic violation provides an officer with probable cause to stop a vehicle, regardless of the severity of the violation. United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001); United States v. Enriquez Luna, 368 F.3d 876, 878 (8th Cir. 2004). It is clear, moreover, that a traffic stop based on a violation of traffic laws does not violate the Fourth Amendment, "even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective." United States v. Whren, 517 U.S. 806 (1996). In this case, the undisputed evidence was that defendant was driving with a taillight that was burned out. Based on the testimony adduced at the hearing and applicable case law, the Court finds, initially, that there was a valid traffic stop.

Once a valid traffic stop occurs, the investigating officer is only entitled to conduct an investigation reasonably related in scope to the circumstances that justified the initial stop. Terry

6

v. Ohio, 392 U.S. 1 (1968).  It is also clear that where an individual is detained after an initial lawful stop, the question is whether the detention was "reasonably related in scope to the circumstances which justified the interference in the first place."  United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990).  Law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may be afoot.  United States v. Hill, 91 F.3d 1064, 1069 (8th Cir. 1996).  A police officer may also run a computer check to establish whether the vehicle might have been stolen or whether there are outstanding warrants for any passengers in the car.  See United States v. McManus, 70 F.3d 990, 993 (8th Cir. 1995); United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995).  Additionally, if the responses provided give rise to suspicions unrelated to the traffic offense, the officer's inquiry may be broadened.  Id. at 357.  Further, a law enforcement officer may detain a driver during a traffic stop as long as is reasonably necessary to issue a traffic citation.  United States v. Jones, 269 F.3d 919, 924-25 (8th Cir. 2001).

The Court has fully reviewed the record, including the testimony adduced at the hearing and the videotape of the stop in question.  Defendant suggests that Corporal Bunch requested consent to search the vehicle without reasonable suspicion for doing so, thus detaining him in violation of the Fourth Amendment.  As the government asserts, however, reasonable suspicion is not a prerequisite before a law enforcement officer is entitled to request consent to search a vehicle.

The Eighth Circuit has clearly held that, even without reasonable suspicion, if an encounter after a traffic stop's completion is consensual, a law enforcement officer may ask questions unrelated to the traffic stop and request consent to search the vehicle.  United States v.

7

Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002). The Court in Santos-Garcia recognized that there is "no litmus test" for determining whether an encounter is consensual or whether it constitutes a seizure. Id. at 1078 (internal citations omitted). It held, however, that some circumstances are indicative of a seizure, such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person . . ., or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. (internal quotations omitted).

The evidence in this case, both through the testimony and the videotape, indicates that the traffic stop was completed after Corporal Bunch issued the citation, explained it to defendant, and returned the paperwork and his identification card to him. At that point, defendant was no longer seized within the meaning of the Fourth Amendment. Once Corporal Bunch returned the identification and issued the traffic citation, defendant had everything necessary to continue on his trip. Id. At that point, defendant had been stopped about fifteen minutes. There is no indication, based on a thorough review of the record and videotape, that the post-stop encounter was other than consensual. The officer asked the question about whether there were drugs or paraphernalia in the truck and whether defendant minded if he searched the vehicle. The videotape establishes that the encounter between the two was not coercive or overbearing, and in fact, that "the entire exchange was cooperative." Id. None of the factors mentioned by defendant would lead to the conclusion that the encounter was other than consensual under Fourth Amendment standards. Being patted down and sitting in the patrol car with a single officer while he conduced a records check in conjunction with the traffic stop was clearly within the scope of that initial stop. The fact that there was a canine unit in the back of the patrol car

8

did not appear from the videotape to have any bearing on the exchange between Corporal Bunch and defendant. The fact that the officer performed a short test to determine if a field sobriety test was in order does not constitute a threatening environment. Further, the officer had no legal obligation to advise defendant that he was free to leave, that he had the right to refuse consent, or to obtain written consent. E.g., Ohio v. Robinette, 519 U.S. 33, 39-40 (1996); United States v. Morgan, 270 F.3d 625, 630 (8th Cir. 2001). When Corporal Bunch asked permission to searched his truck, defendant replied affirmatively. The videotape indicates that he willingly walked to the front of the vehicle, and stood by patiently while the search began. Up to this point, there was only one officer present, there was no overt show of force, and there was nothing to suggest a threatening, coercive environment. Once the search was started, defendant volunteered that there were weapons behind the seat. The Court concludes that, based on the totality of the circumstances, the encounter was consensual.

Further, there is nothing before the Court to suggest that defendant's consent was not voluntarily given. There was no evidence adduced at the hearing nor through the videotape to suggest that the officer acted in any manner that would suggest deceit, duress, or coercion. Corporal Bunch statement that defendant should tell him if there were any drugs or paraphernalia in the truck was not made in a compelling, threatening manner, and would not lead to the conclusion that defendant's consent was not voluntary. Further, according to the officer's testimony, defendant did not object to the search or attempt to withdraw his consent. Mr. Cotter testified, in fact, that defendant essentially assisted in the search by advising the officers that there were firearms behind the seat. Corporal Bunch indicated that he was not intoxicated, and there was evidence to establish that defendant had prior experience with law enforcement.

Based on the totality of the circumstances, the Court finds that defendant's consent was voluntarily given. United States v. Chaidez, 906 F.2d 377, 380-81 (8th Cir. 1990). Accordingly, the Court finds that the search was reasonable, and that it must be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri, RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 10/06/05